*Decision will be entered under Rule 50.*

COTTON STATES FERTILIZER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59879. Filed September 16, 1957.

*J. René Hawkins, Esq.*, for the petitioner.
*Jack D. Yarbrough, Esq.*, for the respondent.

## OPINION.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the taxable year ended June 30, 1952, in the amount of $2,932.54. Only that portion of the deficiency attributable to the disallowance as

expense deductions of certain professional fees paid to a firm of architects and a contractor in the total amount of $3,452 is contested.

The parties have submitted this proceeding upon a stipulation of facts pursuant to Rule 30 of the Court's Rules of Practice. A summary of this stipulation is set forth below.

Petitioner is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Macon, Georgia. The return for the period here involved was filed with the director of internal revenue at Atlanta, Georgia.

During the taxable year here involved, petitioner was engaged in the business of the manufacture and sale of commercial fertilizer. In August 1951, its dry mix and acidulating plants were destroyed by fire. At the time of the fire, petitioner held hazard insurance policies in force and effect which insured petitioner against such fire loss. Under the contracts of insurance, claims arose in behalf of the petitioner against the insurance carriers.

The plants which were destroyed by fire in 1951 were constructed in 1914. At various times between 1914 and 1951 construction changes had been made in the plants but there was not available an accurate record of such changes. Some parts of the plans and specifications for the plants which were destroyed were available after the fire but such plans and specifications were not complete.

In order to present its claims to the insurance companies, the petitioner employed a firm of architects to recreate plans and specifications of the destroyed plants. Petitioner also employed a contractor skilled in estimating cost to estimate the replacement cost of the destroyed plants in accordance with the recreated plans and specifications prepared by the architects. From the recreated plans and specifications prepared by the architects and the estimate prepared by the contractor, petitioner reconstructed the replacement cost of the destroyed plants at the then current market price. The replacement cost of the destroyed plants thus determined served as a basis for the claims of the petitioner against the insurance carriers.

As a result of the claims made to the insurance companies, the petitioner received from the companies the amount of $275,440.41 for the damage to the buildings, machinery, and equipment of the petitioner. The insurance proceeds received by petitioner exceeded the adjusted basis of the plants, machinery, and equipment destroyed in the fire. In December 1951 and January 1952 the funds received by petitioner from the insurance companies in the amount of $275,-440.41 were deposited in a special account at the First National Bank and Trust Company, Macon, Georgia, and designated "Building, Machinery and Equipment Replacement Account." The funds in this account were used in replacing the destroyed plants, machinery, and

equipment. The cost of replacing the destroyed plants, machinery, and equipment exceeded $275,440.41 and, in accordance with section 112 (f), I. R. C. 1939, petitioner did not report any gain on the receipt of the insurance proceeds in the amount of $275,440.41 on its corporation income tax return for the taxable year ended June 30, 1952.

The plans and specifications prepared by the architects and the estimate prepared by the contractor were used by the petitioner only in connection with the determination of the amount of petitioner's claims against the insurance carriers.

The building constructed by the petitioner to replace the destroyed plants was of a modern design for which another set of plans and specifications was prepared. The charges for this set of plans and specifications were capitalized as a part of the cost of the new buildings.

On December 28, 1951, petitioner paid the architects for the recreated plans and specifications of the destroyed plants the sum of $3,052. This payment was made from the general funds of petitioner and was not made from the insurance proceeds deposited in the special account. This payment to the architects has been disallowed as a deduction by respondent and the disallowance is contested by petitioner.

On January 3, 1952, petitioner paid the contractor for preparing the estimate of the replacement cost of the destroyed plants the sum of $400. Such payment as aforesaid was not made out of the insurance proceeds. This payment to the contractor has been disallowed as a deduction by respondent and the disallowance is contested by petitioner.

The sole issue in this case is whether the expenditures made by petitioner during the taxable year ended June 30, 1952, for the services of a firm of architects and a contractor in the total amount of $3,452 are *non*deductible pursuant to the provisions of section 24 (a) (5) of the Internal Revenue Code of 1939.[1] The material provisions of this section are as follows:

SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(5) Any amount otherwise allowable as a deduction which is allocable to one or more classes of income \* \* \* wholly exempt from the taxes imposed by this chapter \* \* \*

We assume that the amounts in question are "otherwise allowable as a deduction" as that phrase is used in section 24. If that were not so, there would be no point in respondent's invoking section 24. There-

---

[1] All further references herein to section numbers are of the Internal Revenue Code of 1939.

fore, the issue resolves itself into two inquiries, (1) whether the expenditures in question are allocable to the $275,440.41 of insurance proceeds received by petitioner, and (2) whether the said proceeds are "income * * * wholly exempt" from the taxes imposed by chapter I of subtitle A of the Code.

For the purposes of this opinion, we may assume without deciding that the expenditures of $3,452 are allocable to the proceeds of $275,-440.41. This assumption brings us to the principal question in this case as to whether the proceeds are "income * * * wholly exempt from the taxes imposed by this chapter" as that phrase is used in section 24 (a) (5), *supra*.

Sections 22 (b) and 116 list a great number of items which, according to these sections of the statute, "shall not be included in gross income and shall be exempt from taxation under this chapter." Nowhere in these sections are proceeds from fire insurance listed as being exempt. On the contrary, since the proceeds were in excess of the adjusted basis, such excess would represent gain from the "disposition of property" under section 111 (a) and to the extent recognized under section 111 (c) would be includible in gross income under section 22. Petitioner, however, elected under section 112 (f) [2] to use the insurance proceeds to purchase other property similar or related in service or use to the property destroyed and, under this section, petitioner was not required to recognize any gain for the reason that the cost of the other property was in excess of the insurance proceeds.

Respondent contends that because petitioner was not required, under section 112 (f) (3) (A) to recognize any gain, such gain must be considered as "income * * * wholly exempt" as that term is used in section 24 (a) (5). In support of this contention the respondent relies primarily upon a definition of the term "exempt income" contained in his Regulations 111, section 29.24–4, as meaning "income which is not required to be included in gross income."

We do not agree with this contention. The insurance proceeds did not become "income * * * wholly exempt" by reason of petitioner's

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(f) INVOLUNTARY CONVERSION.—If property (as a result of its destruction in whole or in part * * *) is * * * involuntarily converted—

* * * * * * *

(2) * * * For the purposes of this paragraph and paragraph (3), the term "disposition of the converted property" means the destruction * * * of the converted property * * *

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money * * * and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) Nonrecognition of Gain.—If the taxpayer * * * purchases other property similar or related in service or use to the property so converted * * * at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion * * * exceeds the cost of such other property * * *

election under section 112 (f). Section 113 (a) (9) [3] requires the taxpayer to make certain adjustments to the basis of the property acquired as the result of the involuntary conversion. Specifically, it requires the taxpayer to decrease the basis of the new property by the amount of the gain not recognized by reason of its election under section 112 (f) (3). If the new property is sold in a subsequent year, any gain which petitioner may have realized on the involuntary conversion would be reflected in the income reported in the year of the sale of such asset. Thus it is that the provisions of section 112 (f) do not result in giving a "wholly exempt" classification to income received on an involuntary conversion. At best, section 112 (f) provides for the postponement of tax.

We hold, therefore, that the respondent erred in applying section 24 (a) (5) to the facts of this case. Such cases as *National Engraving Co.*, 3 T. C. 178, and *Donald B. Jones*, 25 T. C. 4, affirmed per curiam (C. A. 3, 1956) 231 F. 2d 655, and others cited by respondent are not in point as they involve only life insurance proceeds which are made wholly exempt by statute. The case of *Ticket Office Equipment Co.*, 20 T. C. 272, affirmed per curiam (C. A. 2, 1954) 213 F. 2d 318, relied on so heavily by petitioner, has almost identical facts but the application of section 24 (a) (5) was not an issue in that proceeding.

Because of the other uncontested adjustments made in the deficiency notice,

*Decision will be entered under Rule 50.*

---

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

* * * * * * *

(9) INVOLUNTARY CONVERSION.— * * * In the case of property purchased by the taxpayer which resulted, under the provisions of section 112 (f) (3), in the nonrecognition of any part of the gain realized as the result of a compulsory or involuntary conversion, the basis shall be the cost of such property *decreased in the amount of the gain not so recognized* * * * [Emphasis supplied.]