110 T.C. No. 12


UNITED STATES TAX COURT


MEL T. NELSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20811-95.              Filed February 19, 1998.


        Petitioner was the sole shareholder of M, an S
corporation.  In the 1991 taxable year, M was
insolvent.  In that year, M disposed of all of its
assets and realized discharge of indebtedness income
pursuant to sec. 61(a)(12), I.R.C.  In accordance with
sec. 108(a), I.R.C., M excluded from gross income the
entire amount of the discharge of indebtedness income.
Sec. 108(a), I.R.C., excludes from gross income,
discharge of indebtedness income if, inter alia, the
taxpayer is insolvent.

        In the same year, petitioner increased the basis
of his stock in M.  Later, petitioner disposed of the
stock.  In turn, petitioner reported a long-term
capital loss on his 1991 Federal income tax return.  R
disallowed a portion of the claimed long-term capital
loss on the premise that sec. 108(d)(7)(A), I.R.C., did
not permit an increase in petitioner's basis in M
stock. Sec. 108(d)(7)(A), I.R.C., provides that the
discharge of indebtedness income exclusion from gross

income operates, for purposes of subchapter S, at the corporate level.

1. <u>Held</u>: In deciding whether petitioner may increase his basis in the corporate stock, sec. 108(d)(7)(A), I.R.C., applies.

2. <u>Held</u>, <u>further</u>, sec. 108(d)(7)(A), I.R.C., precludes the application of the conduit rules of subchapter S.

3. <u>Held</u>, <u>further</u>, petitioner may not increase his basis in M stock to reflect discharge of indebtedness income realized by M.

<u>Neil M. Goff</u>, for petitioner.

<u>Virginia L. Hamilton</u>, for respondent.

HAMBLEN, <u>Judge</u>: Respondent determined a deficiency of $69,381 in petitioner's 1991 Federal income tax. After concessions, the principal issue for decision is whether discharge of indebtedness income realized and excluded from gross income under section 108(a)[1] passes through to shareholders of a subchapter S corporation as an item of income in accordance with section 1366(a)(1)(A) and, in turn, increases the basis of the corporate stock under section 1367.[2]

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Petitioner conceded (1) respondent's reduction of a long-term capital loss from a Metro Auto-Pico transaction by $10,000, and (2) respondent's reduction of allowable passive losses from Western United Service Corp., and Arapahoe Service Corp., by

(continued...)

FINDINGS OF FACT

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts is incorporated herein and found accordingly. Petitioner, Mel T. Nelson, resided in Denver, Colorado, at the time he filed the petition herein. Petitioner was the sole shareholder in Metro Auto, Inc. (MAI), an S corporation.

During the 1991 taxable year, MAI disposed of all of its assets. In the same year, MAI realized discharge of indebtedness income, pursuant to section 61(a)(12), in the amount of $2,030,568 as a result of the disposition and a related agreement between MAI and its creditors.[3] In turn, the COD income of $2,030,568 exceeded MAI's losses by $1,375,790 in 1991. Prior and subsequent to the event giving rise to the COD income, MAI was insolvent. MAI excluded from its gross income the entire amount of the indebtedness discharged by its creditors.

Petitioner increased the basis of his stock in MAI by $1,375,790 in 1991. Subsequently, petitioner disposed of his stock in MAI and, in turn, claimed a long-term capital loss on

---

[2](...continued)
$54,275, thereby increasing petitioner's taxable income by
$54,275.

[3]Discharge of indebtedness is also referred to as
cancellation of debt income (COD). For purposes of convenience
and clarity in this opinion, we refer to the income generated
from the discharge of indebtedness pursuant to sec. 61(a)(12) as
COD.

his 1991 Federal income tax return in the amount of $2,403,996. Respondent denied $1,375,790 of the loss on the premise that petitioner lacked sufficient basis in his MAI stock.

## Ultimate Conclusion

We hold that COD income that is excluded from gross income under section 108(a) does not pass through to a shareholder of an S corporation. Therefore, shareholder basis is not increased.

## OPINION

In the instant case, the principal controversy is whether petitioner is entitled to increase the basis in his S corporation stock pursuant to section 1366(a)(1) by his pro rata share of COD income. This issue is a question of law. Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673.

Section 61 requires that certain amounts be included in income. Absent any exclusionary provision, items of income are included in gross income. Sec. 61(a). Section 61(a)(12) includes COD income in gross income. See also United States v. Kirby Lumber Co., 284 U.S. 1 (1931). Sections 101 through 135 exclude specific items of income from gross income. In particular, section 108(a)(1) provides, in pertinent part, that a taxpayer is permitted to exclude COD income to the extent that a taxpayer is insolvent when the discharge of indebtedness occurs. Section 108(d)(3) defines "insolvency" for this purpose as the

excess of liabilities over the fair market value of the assets, immediately before the discharge.

There is, however, a condition for the exclusion of COD income. Section 108(b)(1) requires the taxpayer to reduce certain tax attributes by the amount of the debt discharged. In particular, section 108(b)(2) enumerates the tax attributes to be reduced and the order in which they are reduced: (1) Net operating losses; (2) general business credits; (3) capital loss carryovers; (4) basis reduction; and (5) foreign tax credit carryovers. Section 108(b)(4)(A) governs the timing of those reductions, requiring that the reductions be made "after the determination of the tax imposed by [chapter 1 of the Code] for the taxable year of the discharge." Thus, the tax attributes are reduced as of the first day of the following tax year.

Section 108(d)(7) prescribes how section 108(a) and (b) are applied to S corporations. Section 108(d)(7) provides in pertinent part:

> (A) * * *[Certain provisions] to be * * * applied at corporate level.--In the case of an S corporation, subsections (a) [and] (b) * * * shall be applied at the corporate level.

> (B) Reduction in carryover of disallowed losses and deductions.--In the case of an S corporation, for purposes of subparagraph (A) of subsection (b)(2), any loss or deduction which is disallowed for the taxable year of the discharge under section 1366(d)(1) shall be treated as a net operating loss for such taxable year.

Section 1366(a) provides, generally, that income, losses, deductions, and credits are passed through pro rata to shareholders on their individual income tax returns. Secs. 1363(a), 1366(a). Section 1366(b) provides that the character of each item of income is determined as if it were realized directly from the source from which the corporation realized it, or incurred in the same manner as the corporation. A shareholder's gross income includes a pro rata share of the subchapter S corporation's gross income. Sec. 1366(c). The shareholder's basis, once computed, limits the amount of losses and deductions that may be taken into account by a shareholder for the taxable year. Sec. 1366(d). Any losses and deduction that the shareholder is not entitled to deduct currently are carried forward indefinitely (suspended losses). Id.

Section 1367(a)(1) limits the items by which the shareholder may increase his basis in the stock of an S corporation to the following items, inter alia:

> (A) the items of income described in subparagraph (A) of section 1366(a)(1), [and]
>
> (B) any nonseparately computed income determined under subparagraph (B) of section 1366(a)(1) * * *

Section 1367(b)(1) provides that an item "required to be included in the gross income of a shareholder and shown on his return" is taken into account under section 1367(a)(1)(A) only to the extent included in gross income on the shareholder's return, increased

or decreased by any adjustment of the item of income in a redetermination of the shareholder's income tax liability.

During the 1991 taxable year, there were no regulations addressing the application of either section 1366(a)(1)(A) or section 1367(a)(1)(A).  However, the legislative history provides guidance with respect to section 1366:

> The following examples illustrate the operation of the bill's pass through rules.
>
> * * * * * * *
>
> d.  Tax-exempt interest--Tax-exempt interest will pass through to the shareholders as such and will increase the shareholders' basis in their subchapter S stock.  Subsequent distributions by a corporation will not result in taxation of the tax-exempt income.  [S. Rept. 97-640, at 15-16 (1982), 1982-2 C.B. 718, 725.]

The Subchapter S Revision Act of 1982 (1982 Act), Pub. L. 97-354, 96 Stat. 1669, enacted section 1367(a) and defined "items of income" by reference to section 1366(a)(1)(A), which refers to "items of income (including tax-exempt income) * * * the separate treatment of which could affect the liability for tax of any shareholder".  The Senate Finance Committee report accompanying the 1982 Act, S. Rept. 97-640, supra at 18, 1982-2 C.B. at 726, further explains:

> 3.  Basis adjustment (sec. 1367)
>
> Under the bill, both taxable and nontaxable income will serve * * * to increase * * * a subchapter S shareholder's basis in the stock of the corporation.

Moreover, the legislative history states, generally, that the basis adjustment rules are analogous to those provided for partnerships under section 705 and require that the basis of a shareholder in an S corporation will be adjusted for income and losses for any corporate tax year before the distribution rules apply for that year.

In the instant case, the parties agree that MAI realized COD income in the amount of $2,030,568 in the taxable year 1991. Moreover, the parties concur that MAI was insolvent at the time the debt was discharged and that the attendant income derived therefrom is excludable from gross income pursuant to section 108(a)(1)(B) and (d)(7). The parties separate, however, on whether the Internal Revenue Code permits petitioner to increase the basis of his MAI stock by the amount of the S corporation's COD income.

In essence, petitioner argues that the excluded COD income is described in section 1366(a)(1)(A) because it could affect his income tax liability if it were treated as a pass-through item of income. In particular, petitioner contends that COD income excluded under section 108(a) is "tax-exempt" income under sections 1366(a) and 1367(a). Thus, petitioner argues that after the amounts are passed through, he is entitled to a basis increase with respect to his MAI stock for the excluded COD income. In sum, petitioner argues that the issue turns on

whether COD income is an item of income (tax-exempt) that passes through to the S corporation shareholders under section 1366(a)(1)(A) as a separately stated item of income. If it is, petitioner contends that it results in a basis increase.

Conversely, respondent argues that the excluded COD income does not pass through to petitioner as the sole shareholder of MAI under section 1366(a)(1)(A). Specifically, respondent states that the literal language of section 108(d)(7)(A) provides that the exclusion will apply at the S corporation level. Thus, respondent contends that petitioner must apply the reduction in tax attributes under section 108(b) on the corporate level. In other words, respondent argues that the COD income never flows through to petitioner. This, in effect, precludes an increase in basis for petitioner as the shareholder of the S corporation.

Therefore, we examine the juxtaposition of the subchapter S provisions and section 108 to determine whether an S corporation shareholder's basis in stock may be increased by the amount of COD income derived by the insolvent corporation. We agree with respondent.

Here, the express language of the subchapter S regime provides that the determination of a shareholder's income tax liability requires that the shareholder must take into account his pro rata share of the corporation's "items of income (including tax-exempt income), loss, deduction, or credit the

separate treatment of which could affect the liability for tax of any shareholder".  Sec. 1366(a)(1)(A).[4]  Moreover, the subchapter S regime incorporates all "nonseparately computed income or losses".  Sec. 1366(a)(1)(B).  Under section 1367(a)(1)(A), income that is enumerated in section 1366(a)(1)(A) increases a shareholder's basis in a subchapter S corporation's stock.  Section 1366(f), however, specifies exceptions to the overall statutory scheme, none of which is implicated here.

The parties' dispute herein centers on the language in section 108(d)(7)(A).  Specifically, the parties differ on the precise meaning of the phrase, "In the case of an S corporation, * * * [section 108] shall be applied at the corporate level."  Sec. 108(d)(7)(A).  Respondent argues that section 108(d)(7)(A) represents an adjustment and/or exception to the principles underlying the subchapter S provisions that items of income realized or recognized at the corporate level are passed through to the shareholders.  On the other hand, petitioner contends that section 108(d)(7)(A) stands for the proposition that prior to the determination of an individual shareholder's income tax liability, the S corporation must be ascertained to be insolvent.

---

[4]This Court addressed facts similar to those found in the instant case when we ruled on cross-motions for summary judgment in Winn v. Commissioner, T.C. Memo. 1997-286. The Winn case has been withdrawn in accordance with T.C. Memo. 1998-71 released this date.

Petitioner, in effect, argues that the result of the interaction between section 108(d)(7)(B) and (b)(2), as governed by section 108(b)(4), is to apply the attribute reduction rules of section 108(b)(2) at the shareholder level. Section 108(b)(4) states that the reduction in tax attributes will be made "<u>after</u> the determination of the tax imposed * * * for the taxable year of the discharge." (Emphasis added.) Next, petitioner points out that "suspended losses" under section 1366(d)(1)-(3) are deemed to be net operating losses. Sec. 108(d)(7)(B). Stated in a different manner, the "suspended losses" of section 1366(d)(1) constitute a tax attribute to be reduced pursuant to section 108(b)(2). Such "suspended losses" are determined at the shareholder level. Sec. 1366(d)(1). Consequently, petitioner extrapolates that the reduction in tax attributes occurs on the shareholder level. Similarly, petitioner reasons that COD income excluded under section 108(a)(1) passes through to the shareholder, increases his or her stock basis, and thus affects his or her "suspended losses" under section 1366(d). According to petitioner, all of this occurs at the shareholder level, prior to the reduction in tax attributes under section 108(b)(2).

Accordingly, in order for petitioner to prevail in this matter, the COD income otherwise excluded from gross income must pass through the corporate form and be apportioned on a pro rata basis among the subchapter S shareholders. We disagree with

petitioner's statutory approach with respect to the COD income exclusion provision because it is simply not plausible. In this instance, section 108(d)(7)(A) explicitly provides that the COD income exclusion operates, for purposes of the subchapter S regime, on the corporate level. Absent any legislative indication to the contrary, we are required to apply the provision as we find it in accordance with its plain meaning. United States v. American Trucking Associations, 310 U.S. 534, 543-544 (1940).

In that regard, it is well established that a specific statutory provision will override a general provision. Bulova Watch Co. v. United States, 365 U.S. 753 (1961); D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208 (1932). Hence, we believe that section 108(d)(7)(A) regulates the treatment of excluded COD income in the context of the subchapter S regime (i.e., sections 1363(a), 1366(a), and 1367(a)). In the same vein, the exceptions delineated in section 1366(f) are not material or applicable since they do not implement the COD income exclusion in the context of the subchapter S regime.

The literal language at issue here provides that the reduction in tax attributes applies at the corporate level. Sec. 108(d)(7)(A). We do not interpret section 108(d)(7)(A) in a narrow manner. Here, we construe the provision to mandate that insolvency is determined--and COD income is excluded from gross

income of an S corporation under section 108(a)--at the corporate level.

Having construed the literal language of the statute, we find our construction of the statute confirmed by a proper view of the statute in the overall statutory scheme. King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991); Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 40, supplemented by 104 T.C. 417 (1995). In that regard, petitioner's argument is undermined by section 1366(b) which provides that the character of any item included under section 1366(a)(1)(A) is determined "as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." Consequently, we construe section 1366(a)(1)(A) in combination with section 108(d)(7)(A) to preclude excluded COD income from recognition at the shareholder level. Thus, since excludable COD income of an insolvent S corporation does not pass through to the shareholders under section 1366(a)(1)(A), it, therefore, cannot increase the basis of their stock under section 1367(a)(1)(A).

Moreover, we note that section 108(d)(6) provides that, in the case of a partnership, the COD income exclusion will be applied at the partner level. Stated in a different manner, COD income realized by the partnership may result in different outcomes depending upon the financial position of each partner;

i.e., insolvent or bankrupt.  In contrast, the COD income

exclusion is determined at the corporate level for purposes of an

S corporation.  Sec. 108(d)(7)(A).

Section 108(d)(6) permits the inference that Congress

intended to decouple the treatment of the COD income exclusion

with respect to partnerships and S corporations.  Prior to

amendment in 1984, section 108(d) provided that, like

partnerships, section 108 applied to S corporations at the owner,

not the entity, level.  The legislative history of the 1984

amendments to section 108(d)(7)(A) states:

> In order to treat all shareholders in the same manner,
> the bill provides that the exclusion of income arising
> from the discharge of indebtedness and the
> corresponding reductions in tax attributes (including
> losses which are not allowed by reason of any
> shareholder's basis limitation) are made at the
> corporate level.  [H. Rept. 98-432, at 1019 (1984.]

Consequently, we believe that Congress intended to preclude the

separate treatment and/or outcomes for S corporation shareholders

as opposed to the approach delineated in section 108(d)(6).[5]

That method is consistent with the application of the COD income

exclusion at the corporate level.  In other words, if Congress

had intended a step-up in basis to accompany the recognition of

---

[5]Arguably, the statutory design reflects that the
shareholders of an S corporation are generally not entitled to
include in their basis for the stock of the corporation their
share of the corporation's indebtedness to third parties.  Estate
of Leavitt v. Commissioner, 90 T.C. 206 (1988), affd. 875 F.2d
420 (4th Cir. 1989).

excluded COD income at the shareholder level, it would have provided for statutory language reaching that result.

Furthermore, the ordering rules provide that the income tax liability for the taxable year of the COD income is determined prior to the reduction in tax attributes. Sec. 108(b)(4)(A). The parties have not cited, and we do not find, authority addressing the mechanism of section 108(b)(4)(A). Petitioner asserts that the reductions in tax attributes in section 108(b)(2) are made after the determination of the tax imposed for the taxable year of the discharge. In other words, the income tax liability of an S corporation and its shareholders must be determined first, and only after such liability is determined can the attributes (including losses suspended under section 1366(d)) be reduced. On the other hand, respondent evidently contends that the "suspended losses" of section 1366(d)(1) should be reduced at the S corporation level before the income tax liability of the shareholder is determined. Thus, respondent argues that the losses of the S corporation must be eliminated under section 108(b)(2).

We are not persuaded by petitioner's argument in this regard. Here, there is nothing in the statutory language which compels excluded COD income to be included in the calculations for an S corporation shareholder's income tax liability. Also, section 108(b)(4)(A) states that the reduction of the tax

attributes occurs after the determination of the tax imposed for "the taxable year of the discharge."  Because section 108(b) applies at the corporate level, we believe that the phrase "taxable year of the discharge" refers to the taxable year of the S corporation.  Consequently, the S corporation reduces its tax attributes by the amount excluded from gross income pursuant to section 108(a) at the end of the corporation's taxable year.

Petitioner suggests that section 108(d)(7)(B) indirectly applies the reduction in tax attributes delineated in section 108(b)(2) at the shareholder level.  Thus, petitioner argues that section 108(d)(7)(A) similarly permits the passthrough of the excluded COD income.  We do not agree.  The language denominated in section 108(d)(7)(B) is fairly explicit.  It provides, in pertinent part, that the "suspended losses" of section 1366(d) are deemed to be net operating losses.

As noted, we construe section 108 as mandating the determination of an S corporation shareholder's income tax liability for the taxable year without reference to the excluded COD income.  In the process, the shareholder must ascertain the amount and extent of any "suspended losses".[6]  Sec. 1366(d)(1).

---

[6]The losses incurred by an S corp. are passed through to the shareholders pursuant to sec. 1366(a)(1) and may be claimed by the shareholders to the extent of their adjusted bases in the corporate stock.  In the event these losses exceed a shareholder's adjusted basis, the losses are "suspended" and may be carried over indefinitely pursuant to sec. 1366(d).

After such determination, the "suspended losses" are carried to the corporate level pursuant to section 108(d)(7)(A), and converted to net operating losses pursuant to section 108(d)(7)(B). Thus, the remaining "suspended losses" under section 1366(d) are deemed to be a tax attribute subject to reduction pursuant to section 108(b). Sec. 108(b)(2)(A). In short, the fact that the "suspended losses" are determined on the shareholder level pursuant to section 1366(d), without more, simply does not denote that the conversion and subsequent reduction are performed on the same level.

Consequently, we do not interpret section 108(d)(7)(B) as an explicit recognition by the Congress that excluded COD income is included in the computation of a shareholder's income tax liability and the subsequent calculation of the "suspended losses" of section 1366(d)(1), nor that section 108(d)(7)(A), through a parallel mechanism, requires that COD income derived by an insolvent S corporation pass through to its shareholders.

In our view, petitioner has focused his analysis too narrowly in construing the subchapter S provisions in the context of the COD income exclusion. In particular, petitioner asserts that COD income is "tax-exempt" income within the meaning of sections 1366(a)(1)(A) and 1367(a)(1)(A). Consequently, petitioner contends that he is required to take account of the excluded COD income at the shareholder level. In that vein,

petitioner attempts to correlate the exclusion from gross income pursuant to section 108 with an item of income that is "tax-exempt" pursuant to section 1366(a)(1)(A), e.g., sections 101(a) (insurance proceeds in excess of premiums paid not subject to taxation), 103(a) (State and local bond interest not subject to taxation), 111(a) (no tax imposed on income arising from the recovery of any amount deducted in prior years to the extent that such income did not produce a tax benefit).  In effect, petitioner argues that the COD income otherwise excluded from gross income is mandated by statute (sections 1366(a)(1)(A) and 1367(a)(1)(A)) to pass through to the S corporation shareholders. On the other hand, respondent argues that the COD income exclusion is tax-deferred, rather than permanently tax-exempt.

There is no definition of "tax-exempt" for purposes of sections 1366 and 1367.  The word "exclusion", however, has been generally defined to mean the act of excluding or the state of being excluded.  Webster's II New Riverside University Dictionary 450 (1984).  In turn, "exclude" is defined as to keep out, or to omit from consideration, and disregard.  Id.  An exclusion that is subject to an offset (the tax attribute reductions) and may be subject to taxation in the future (that is, excluded from gross income for the taxable year) does not signify or indicate an item of income that is necessarily tax exempt on a permanent basis. In contrast, the language in section 103(a) expressly delineates

that gross income does not include income derived from interest paid on any State or local bond.  See also <u>Cotton States Fertilizer Co. v. Commissioner</u>, 28 T.C. 1169, 1172-1173 (1957)(discussion of "wholly exempt" from tax versus postponement of tax).

Moreover, the legislative history with respect to section 108 manifests an intention to "insure that the debt discharge amount eventually will result in ordinary income".  S. Rept. 96-1035, at 11 (1980), 1980-2 C.B. 620, 625.  Finally, the U.S. Supreme Court observed in <u>United States v. Centennial Sav. Bank</u>, 499 U.S. 573, 580 (1991):

> The effect of section 108 is not genuinely to exempt such income from taxation, but rather to defer the payment of the tax by reducing the taxpayer's annual depreciation deductions or by increasing the size of taxable gains upon ultimate disposition of the reduced-basis property.

In short, section 108 is not designed or intended to be a permanent exemption from tax.  We, therefore, reject petitioner's argument that excluded COD income is "tax-exempt" pursuant to section 1366(a)(1)(A) and, thus, is statutorily required to pass through to the S corporation shareholders.

Next, petitioner cites <u>CSI Hydrostatic Testers, Inc. v. Commissioner</u>, 103 T.C. 398 (1994), affd. per curiam 62 F.3d 136 (5th Cir. 1995), as being analogous and dispositive of this case.  However, we find the citation to be inapposite.  The issue in <u>CSI Hydrostatic Testers, Inc. v. Commissioner</u>, <u>supra</u>, entailed the

effect of COD income excluded under section 108 upon the earnings and profits of a subsidiary corporation for purposes of sec. 1.1502-32, Income Tax Regs. for the 1987 taxable year. We held in that case that COD income had to be included in the corporate taxpayer's subsidiary's earnings and profits for purposes of the investment basis adjustment rules of section 1.1502-32, Income Tax Regs. Accordingly, CSI Hydrostatic Testers, Inc. v. Commissioner, supra, was decided within the context of the consolidated return regulations as applicable to the subchapter C corporations. We observed:

> We find nothing in sections 1.1502-32 and 1.1502-19, Income Tax Regs., which prevents the application of section 312(l) when calculating a subsidiary's earnings and profits for the purpose of either the investment basis adjustment rules or the requirement that the balance of an excess loss account be included in a parent corporation's income when its subsidiary becomes insolvent. Consequently, COD income is included in a subsidiary's earnings and profits for purposes of computing the parent corporation's balance in its excess loss account in the stock of its subsidiary under section 1.1502-19, Income Tax Regs. [Id. at 411.]

In other words, we concluded that a specific provision in the Internal Revenue Code (section 312(l)) served to increase the earnings and profits of the subsidiary and resulted in a reduction or decrease in the parent corporation's income tax liability. Here, there is no express support for the proposition that the COD income must pass through to the shareholders of an S corporation. In that regard, section 108(d)(7)(A) is the

applicable provision here and, thus, we must apply it as written. CSI Hydrostatic Testers, Inc. v. Commissioner, supra; Wyman-Gordon Co. v. Commissioner, 89 T.C. 207 (1987).

Accordingly, there is nothing in the foregoing statutory language that requires or even implies that the COD income passes through to the S corporation shareholders. Hence, we do not conclude from a literal application of the relevant statutory provisions that a shareholder in an insolvent S corporation may increase his or her basis in stock with respect to the excluded COD income.

It is appropriate, however, to examine the legislative history for further evidence of the legislative purposes. United States v. American Trucking Associations, 310 U.S. at 543-544. We look to the statute as written by the legislators, and we consult the statute's legislative history to learn its intended purpose and to resolve ambiguity in the words used therein. Landgraf v. USI Film Prods., 511 U.S. 244 (1994); Garcia v. United States, 469 U.S. 70, 76 n.3 (1984); Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Finally, exemptions from taxation cannot rest on "mere implications". United States v. Stewart, 311 U.S. 60, 71 (1940).

With these general principles in mind, we examine the legislative history and purpose of section 108. Initially, the insolvency exception was a judicially created doctrine. See,

e.g., Fifth Ave.-Fourteenth St. Corp. v. Commissioner, 147 F.2d 453, 457 (2d Cir. 1945); Dallas Transfer & Terminal Warehouse Co. v. Commissioner, 70 F.2d 95, 96 (5th Cir. 1934); Mertens, Law of Federal Income Taxation, sec. 11.42 (rev. 1990). Section 108 codified the judicially created insolvency exception as an exclusion. Merkel v. Commissioner, 109 T.C. _____ (1997); Estate of Delman v. Commissioner, 73 T.C. 15, 32 (1979). Section 108 was enacted by the Bankruptcy Tax Act of 1980, Pub. L. 96-589, sec. 2, 94 Stat. 3389-3394; see also S. Rept. 96-1035, supra at 10, 1980-2 C.B. at 624. Section 108 was "intended to accommodate both bankruptcy policy and tax policy." S. Rept. 96-1035, supra at 10, 1980-2 C.B. at 624. The legislative history illustrates that Congress did not want an insolvent or bankrupt debtor to be "burdened with an immediate tax liability". Id. at 10, 1980-2 C.B. at 624. Also, Congress devised the statute to defer, and eventually collect within a reasonable period, "tax on, ordinary income realized from debt discharge." S. Rept. 96-1035, supra at 10, 1980-2 C.B. at 625. Thus, in effect, Congress established the tax-deferral mechanism in section 108 so that the prospect of immediate tax liability would not deter businesses from taking advantage of opportunities to repurchase or liquidate their debts at less than face value. H. Rept. 855, 76th Cong., 1st Sess. 5 (1939), 1939-2 C.B. 504, 507; S. Rept. 1631, 77th Cong. 2d Sess. 77-78 (1942), 1942-2 C.B. 504, 564. United States v. Centennial

Sav. Bank, 499 U.S. at 582-583.  Accordingly, section 108 was enacted to reduce the possibility of permanent deferral by requiring the excluded income to be applied against the basis of depreciable assets, net operating losses, capital loss carryovers, and tax credits.

In light of the relatively sparse legislative history that bears on the issue before us, we must construe what we can to form a proper perspective and provide a definitive answer to this anomalous situation.  Here, petitioner has not borne an economic cost.  On the contrary, it would appear that the economic cost was to others, the creditors of the corporation.  Nor has petitioner made an economic outlay.  Section 108 allows an insolvent S corporation to receive COD income sheltered from immediate taxation to its shareholders.  To permit petitioner to increase basis in the stock of the corporation on account of such tax-deferred income would produce a windfall to him.

The legislative history further illustrates that once a taxpayer reduces its tax attributes pursuant to section 108(b)(2), "Any further remaining debt discharge * * * does not result in income or have other tax consequences."  S. Rept. 96-1035, supra at 2, 1980-2 C.B. at 620-621.  We conclude from the foregoing language that Congress did not intend for the taxpayer to have any further tax consequences, either favorable or unfavorable, from the COD income subsequent to the reduction in

tax attributes.  In particular, to the extent that COD income exceeds the tax attributes that are reduced, or if there are no attributes to reduce, such "excess" income does not go through the corporate form to the subchapter S shareholders, pursuant to section 1366(a)(1)(A).  In this instance, we believe that the relevant legislative history precludes an increase (or decrease) in basis since this represents, in effect, a tax consequence.  S. Rept. 96-1035, supra at 2, 1980-2 C.B. 620-621.

Furthermore, we reject petitioner's contention that the exclusion for income from the discharge of qualified real property business indebtedness in section 108(a)(1)(D) is, in effect, an ex post facto exception to the general design of section 108 in which COD income with respect to an insolvent S corporation passes through to the individual shareholders.  The legislative history with respect to section 108(a)(1)(D) clarifies that the exclusion and basis reduction are both made at the S corporation level.  H. Rept. 103-111, at 624-625 (1993), 1993-3 C.B. 167, 200-201.  Moreover, the committee report states that "the provision simply defers income to the shareholders." Id. at 625, 1933-3 C.B. at 201.  We believe that the committee report does not indicate a congressional understanding that section 108 generally provides that the S corporation shareholders' bases in their stock are adjusted by the otherwise excluded COD income.

Finally, the Supreme Court has repeatedly held that exemptions as well as deductions are a matter of legislative grace, and that a taxpayer seeking either must demonstrate that he comes squarely within the terms of the law conferring the benefit sought.[7]  Bingler v. Johnson, 394 U.S. 741, 751-752 (1969); Commissioner v. Jacobson, 336 U.S. 28, 48-49 (1949); United States v. Stewart, 311 U.S. at 71; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  In that vein, we have sustained and applied this proposition.  See, e.g., Nelson v. Commissioner, 30 T.C. 1151, 1154 (1958).

In this instance, borrowed funds are excluded from income in the first instance because the corporation's obligation to repay the funds offsets any increase in the corporation's assets; if

---

[7]The Supreme Court, over a century ago, observed:

These cases show the principle upon which is founded the rule that a claim for exemption from taxation must be clearly made out.  Taxes being the sole means by which sovereignties can maintain their existence, any claim on the part of any one to be exempt from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language.  There must be no doubt or ambiguity in the language used upon which the claim to the exemption is founded.  It has been said that a well-founded doubt is fatal to the claim; no implication will be indulged in for the purpose of construing the language used as giving the claim for exemption where such claim is not founded upon the plain and clearly expressed intention of the taxing power. [Bank of Commerce v. Tennessee, 161 U.S. 134, 146 (1896).]

the corporation is thereafter released from its obligation to repay, it will enjoy a net increase in assets equal to the forgiven portion of the debt, and the basis for the original exclusion thus evaporates.  See Commissioner v. Tufts, 461 U.S. 300, 307, 310-311 n.11 (1983); Commissioner v. Jacobson, supra at 38; United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931).

Here, we note that petitioner's construction of section 108 permits him to increase his basis in stock despite the absorption and/or elimination of the enumerated tax attributes which is the "cost" of excluding COD income from gross income.  Petitioner's statutory approach, in effect, vitiates the general Congressional design of subjecting income in the indefinite future to taxation. See S. Rept. 96-1035, supra at 11, 1980-2 C.B. 625.[8]  Similarly, in the partnership context and prior to the enactment of the provision at issue here, we have observed that an increase in basis is allowable when COD income is actually recognized, and no basis increase is warranted when application of the insolvency exception prevents such recognition.  Babin v. Commissioner, 23

---

[8]We also note that in order for a shareholder to increase the basis in his or her stock, or in the S corporation shareholder's adjusted basis derived and apportioned from the indebtedness owed by the corporation itself, to absorb deductions or losses, the shareholder must make a genuine economic outlay. See Uri v. Commissioner, 949 F.2d 371 (10th Cir. 1991), affg. T.C. Memo. 1989-58; see also Hitchens v. Commissioner, 103 T.C. 711, 715 (1994).  In this instance, petitioner has not made a genuine economic outlay.

F.3d at 1034; <u>Gershkowitz v. Commissioner</u>, 88 T.C. 984, 1009 (1987).

Thus, we decline to adopt petitioner's construction which, essentially, grants him an unwarranted benefit in addition to the exclusion from gross income for an insolvent S corporation. We believe that our construction is narrowly drawn and consistent with the statutory design and intent. <u>Nelson v. Commissioner</u>, <u>supra</u> at 1154.

Accordingly, we hold that an S corporation shareholder may not increase basis in stock due to excluded COD income.

To reflect the foregoing,

<u>Decision will be entered</u><br><u>under Rule 155</u>.

Reviewed by the Court.


COHEN, CHABOT, SWIFT, JACOBS, GERBER, WELLS, RUWE, CHIECHI, LARO, VASQUEZ, and GALE, <u>JJ</u>., agree with this majority opinion.

BEGHE, <u>J</u>., concurring: I concur in the ultimate conclusion of the majority opinion and the part of it that Judge Foley agrees with, that a straightforward inquiry under section 108 suffices to produce the conclusion. No extended exegesis to determine the character of COD of an insolvent S corporation as "tax-exempt income", as "deferred income", or as an unrealized "tax nothing" is needed.

Applying the maxim that "superfluity does not vitiate",[1] I therefore concur in more than the "result only" of the majority opinion, even though I don't join it because I don't adopt everything it says. By a parity of reasoning, I don't join Judge Foley's "concurring in result only" opinion--even though I fully agree with his text--because of his restrictive description of what he's concurring in.

## I.

Section 108(a) provides that gross income does not include COD of an insolvent (or bankrupt) taxpayer. Section 108(d)(7)(A) provides that, in the case of an S corporation, subsections (a) and (b) of section 108 "shall be applied at the corporate level."

Section 108 is properly interpreted in a way that prevents a basis step-up in the stock of an S corporation on account of COD excluded from gross income by section 108(a). To interpret section 108 to the contrary would deprive the S corporation corporate level attribute reduction scheme of any consequence.

Following the approach to statutory construction that favors the reading of an ambiguous provision so as to avoid an illogical result that is inconsistent with the larger statutory scheme of which the provision is a part, I join the majority and Judge Foley in reading section 108(d)(7)(A) as an exception to the normal S corporation passthrough regime. Section 108(d)(7)(A)

---

[1] See, e.g., Cal. Civ. Code, sec. 3537 (West 1997).

traps the excluded COD of an S corporation at the corporate level in a mode similar to the corporate level rules of sections 1374 and 1375 regarding built-in gains and excess net passive income.

Petitioner argues that the only function of section 108(d)(7)(A) is to determine the character of COD as excludable or not at the corporate level and that it's then passed through to the shareholders under the general passthrough regime of subchapter S. As has been observed, see Blanchard, "Debunking a Shibboleth", 58 Tax Notes 1673 (Mar. 22, 1993) (letter to editor), if petitioner's passthrough interpretation were correct, then section 1366(b) would come into play. Section 1366(b) provides that the character of any item included under section 1366(a)(1) as a passthrough item is determined "as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation". Section 1366(b) refutes petitioner's passthrough interpretation of section 108(d)(7)(A). There's no way, actually or fictively, in which the equivalence rule of section 1366(b) could apply to a solvent shareholder of an insolvent S corporation.[2]

---

[2] It's interesting but irrelevant that petitioner's Form 1040 for 1991 includes a Form 982 (Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment)) that indicates petitioner was also insolvent and had substantial COD unrelated to MAI that was applied in reduction of his own NOL for the year and carryovers from prior years. MAI

(continued...)

II.

I mush on in an attempt to make sense of the stipulated record and arrive at an understanding of what happens to the current year's losses of an insolvent S corporation that experiences COD. The case at hand is not the most satisfactory vehicle for this purpose because the stipulation of facts is so terse--the only documents in evidence are the statutory notice, petitioner's 1991 income tax return, and MAI's 1991 Form 1120S-- as to raise and leave unanswered questions about what actually happened and the significance of what was shown and claimed on the MAI Form 1120S and petitioner's return.[3]

Judge Foley's reference to the "application of section 108(b) and the resulting reduction of tax attributes (i.e., MAI's net operating loss)" adverts to an issue that the parties didn't really address. This issue arises from the fact, which might be inferred from the parties' stipulation "that the COD income of $2,030,568 exceeded losses of MAI by $1,375,790 in 1991", that, as respondent asked the Court to find as a fact, "MAI had losses of $654,778". The amount by which MAI's COD of $2,030,568 exceeded those losses is $1,375,790, the portion of petitioner's claimed basis in the stock of MAI that respondent disallowed.

----

[2](...continued)
didn't file a Form 982 of its own with its 1991 Form 1120S.

[3] Perhaps the Rule 155 computation to be submitted by the parties will clarify these matters.

Petitioner's reply brief makes the point in footnote 2, but doesn't return to it in the text, that, under petitioner's theory of the case, petitioner in the first instance was entitled to increase the basis of his MAI stock by the full amount of MAI's COD, $2,030,568, unreduced by its $654,778 of losses.[4] Petitioner's argument on the point runs as follows: "Section 108(b)(4)(A) states clearly that the `reductions described in paragraph (2) [the attribute reductions] shall be made after the determination of the tax imposed by this chapter for the taxable year of the discharge'. * * * However, under the timing rules

_____

[4] No net operating loss as such in the amount of $654,788 appears on the MAI Form 1120S. The capital loss claimed by petitioner on his return on the disposition of MAI stock (for no consideration) was $2,403,996, apparently not reduced on petitioner's return by any losses shown by MAI. The stipulated record does not disclose the source of the basis of $1,028,206 of petitioner's stock of MAI that respondent allowed as a long-term capital loss. One would have thought that, if MAI did have losses of $654,788, and that petitioner did have $1,028,206 of basis in his stock, then under the general ordering rule of sec. 108(b)(2)(A) and (D), such losses would have thus been applied to reduce the basis. MAI's Form 1120S shows on its face that MAI had ordinary income of $522,091 (gross income less deductions) which petitioner reported on his return and a section 1231 loss of $651,626 and net loss from rental real estate of $3,152, which add up to the losses of $654,788. Nevertheless, the sum of the ordinary income shown above and the losses plus other items on Schedule K of the Form 1120S show an overall loss of $155,287. It also appears that petitioner, in addition to showing a basis increase for his MAI stock, also reported positive income of $2,630,730, which may be attributable in part to the COD of MAI.

The manner in which the MAI stock petitioner disposed of is not described in the stipulated record. I would assume that the stock was regarded as worthless. The MAI Schedule L for the 1991 Form 1120S provides an opening balance sheet but no closing balance sheet.

of section 108(b)(4)(A), Petitioner should have calculated his tax liability without reducing the COD income by his share of MAI's loss.  * * *  [This is because] § 108(b)(4)(A) states that attribute reduction occurs only <u>after</u> the liability for the taxable year of the discharge has been determined."  Thus, taking petitioner's argument to its next step, petitioner would have sufficient basis in his S corporation stock at the end of 1991 to allow a passthrough of the $654,778 loss and to start 1992 with a net increase of that basis of $1,375,790.

That such is the result that seems to follow from petitioner's argument about the application of the ordering rules of section 108(b)(4), reinforces the correctness of the Court's conclusion about section 108(d)(7), which specifically applies to S corporations and their shareholders.  Section 108(d)(7) trumps section 108(b)(4), which is a provision of more general applicability to insolvent taxable entities, such as C corporations and individuals, who experience COD.

Nevertheless, the question remains:  How would section 108(d)(7)(B) operate if MAI did actually suffer a 1991 NOL in the amount of $654,778?  Section 108(d)(7)(B), as in effect for the year in issue, provides:

> (B) Reduction in carryover of disallowed losses and deductions.--In the case of an S corporation, for purposes of subparagraph (A) of subsection (b)(2), any loss or deduction which is disallowed for the taxable year of the discharge under section 1366(d)(1) shall be treated as a net operating loss for such taxable year.

Ordinarily, the current year's NOL of an S corporation
passes through to its shareholder(s) under section 1366(a)(1)(A).
If such a shareholder should lack sufficient basis in his stock
in and debt from the corporation to use his share of the NOL
currently, it would be disallowed and suspended under section
1366(d)(1).  Section 108(d)(7)(B) says that any loss or deduction
of an insolvent S corporation with COD that is so suspended shall
be treated as an NOL of the corporation and reduced at the
corporate level under section 108(b)(2)(A).  The foregoing would
explain how petitioner arrived at the upward basis adjustment he
claimed in the amount of $1,375,790, reducing the total COD of
$2,030,568 by the amount of the corporate loss of $654,788, and
thereby accounting for the entire amount of MAI's COD.[5]  Although
we have rejected petitioner's arguments for the upward basis
adjustment he claimed, he and his return preparer deserve credit
for not taking a return position as aggressive as his counsel
argues he was entitled to.

III.

Respondent's and petitioner's briefs in this case and in
Winn v. Commissioner, T.C. Memo. 1998-71, and the voluminous
literature have devoted inordinate attention to the question of

---

[5] Left unanswered is my question supra note 3, asking how
petitioner could have had a basis of $1,028,206 in his stock of
MAI that respondent did not disallow.

how excluded COD is to be characterized.  As made clear by Judge Foley and amplified in Part I. above, that question is of no moment.  The only relevant inquiry under section 1366 is not whether COD excluded from gross income of an insolvent S corporation is "tax-exempt income", but whether it's a passthrough item at all.  Because section 108(d)(7)(A) dictates that it isn't (as the majority and Judge Foley and I agree), it doesn't pass through to the shareholder under section 1366(a)(1)(A), and can't increase the basis of his stock under section 1367(a)(1)(A).

If the characterization question is to be addressed, as the majority opinion undertakes to do, I believe there's a complementary relationship between respondent's "deferred income" argument and respondent's other argument that COD excluded under section 108 is an unrealized "tax nothing" for the purposes of subchapter S:  COD of an insolvent S corporation is "deferred income" to the extent the S corporation has tax attributes to adjust; as to any excess, it's a "tax nothing".

Both the majority opinion (pp. 22-23) and Judge Foley's concurring opinion paraphrase and quote as having application the legislative history of the Bankruptcy Tax Act of 1980, S. Rept. 96-1035, 2 (1980), 1980-2 C.B. 620, 621:  "Once a taxpayer reduces its tax attributes pursuant to section 108(b)(2) `Any

further remaining debt discharge amount is disregarded, i.e.,
does not result in income or have other tax consequences.'"

This language of the legislative history evidences an intent
to preserve the notion of section 1.61-12(b), Income Tax Regs.:
"Income is not realized by a taxpayer * * * as the result of an
adjudication in bankruptcy, or by virtue of an agreement among
his creditors not consummated under any provision of the
Bankruptcy Act, if immediately thereafter the taxpayer's
liabilities exceed the value of his assets", at least to the
extent that there are no more tax attributes to adjust under
section 108(b).

I therefore join the majority in rejecting petitioner's
argument that COD is one of the "items of income (including tax-
exempt income)" mentioned in section 1366(a)(1)(A) that is passed
through to the shareholder(s).  In so doing, I disagree with
petitioner's corollary conclusion that all items excluded from
gross income under sections 101 through 135 of the Code must be
treated as the same kind of "tax-exempt income" under section
1366(a)(1)(A).[6]

---

[6] I agree with respondent's argument that the location of
sec. 108 with other Code provisions, such as secs. 101 and 103,
in subtitle A, ch. 1, subch. B, part III, entitled "Items
Specifically Excluded From Gross Income", does not require that
all such sections be treated in identical fashion for the
purposes of applying sec. 1366(a)(1)(A).  See sec. 7806(b) (No
inference, implication, etc., as to legal effects to be drawn
from arrangement, classification, location, grouping, descriptive

(continued...)

There's a significant difference between COD under section 108, on the one hand, and items such as life insurance proceeds under section 101 and tax-exempt bond interest under section 103, on the other. The reference to "tax-exempt" income in section 1366(a)(1)(A) is clearly intended to include receipts excluded from gross income under such sections as 101 and 103, which represent returns on or arising from investment by or on behalf of the recipient. The reference does not include excluded COD that is attributable to loans to the S corporation by third-party creditors; the entire structure of the subchapter S regime denies basis to shareholders who lack any such investment. See, e.g., Spencer v. Commissioner, 110 T.C. ___, ___ (1998), and cases cited at slip op. 25.

IV.

In Winn v. Commissioner, supra, the introduction of Respondent's Memorandum of Facts and Law in Support of Respondent's Objection to Petitioner's Cross Motion for Partial Summary Judgment in docket No. 5359-96 observes in passing that, even if the taxpayer should be entitled to the upward basis adjustment he claims, his right to take it into account for current tax purposes would be subject to the at-risk limitations under section 465.

---

[6](...continued)
matter, etc.).

I agree with respondent's observation. Although "section 465 had its origins in Congress' concern over the use of nonrecourse financing or other devices in tax oriented investments, the scope of section 465 is not limited to tax shelters." Lansburgh v. Commissioner, 92 T.C. 448, 451 (1989) (citing Peters v. Commissioner, 77 T.C. 1158, 1165 (1981)). The legislative intent of section 465--to forestall current reductions in income tax liability arising from basis step-ups that haven't been and won't be paid for--prescribes yet another antidote for the unpaid basis step-ups claimed by petitioners in the case at hand and other pending cases.

HALPERN, J., agrees with this concurring opinion.

FOLEY, J., concurring in result only:  I agree with the majority's holding.  Section 108(d)(7)(A) explicitly provides that subsections (a), (b), (c), and (g) of section 108 are to be applied at the corporate level.  I write separately to emphasize that after the application of section 108(b) and the resulting reduction of tax attributes (i.e., MAI's net operating loss) there are no "items of income", tax-exempt or otherwise, to which section 1366(a) may apply.  The legislative history accompanying the Bankruptcy Tax Act of 1980 states that after a taxpayer reduces its tax attributes "Any further remaining debt discharge amount is disregarded, i.e., does not result in income or have other tax consequences."  S. Rept. 96-1035, at 2 (1980), 1980-2 C.B. 620, 621.  Thus, there are no "items of income", and, as a result, no basis adjustment pursuant to section 1367.  Accordingly, there is no need to distinguish between "tax-exempt" and "deferred" income.

SWIFT, PARR, WHALEN, and COLVIN, JJ., agree with this concurring in result only opinion.