T.C. Memo. 1999-22


UNITED STATES TAX COURT


JEROME B. CRONIN AND STACI L. CRONIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18408-97.                           January 29, 1999.


<u>Joseph Peck</u>, for petitioners.

<u>David S. Weiner</u>, for respondent.


MEMORANDUM OPINION


LARO, <u>Judge</u>:  Respondent determined deficiencies in
petitioners Jerome B. and Staci L. Cronin's 1991 through 1994
Federal income tax in the amounts of $7,067, $28,415, $21,134,
and $3,506, respectively.  Respondent's determination was based
on the disallowance of a basis step-up petitioner Mr. Cronin
claimed with respect to stock of Impact Audio, Inc. (Impact).
Impact is an S corporation in which petitioner Mr. Cronin held a

95 percent ownership interest.[1] The issue for consideration is whether petitioner may increase his Impact stock's basis by the amount of certain cancellation of indebtedness (COD) income that Impact realized at a time when it was insolvent.[2] We hold that he may not. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rule of Practice and Procedure. Amounts are rounded to the nearest dollar.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and the accompanying exhibits are incorporated herein and found accordingly.

Petitioners resided in Barrington, Illinois, at the time they filed their petition. They filed joint Federal income tax returns for the taxable years 1991 through 1994. At some point, petitioners filed Form 1045, Application for Tentative Refund. On Form 1045, they claimed 1991 through 1993 refunds based on a 1994 net operating loss deduction (NOLD) relating to petitioner husband's 95 percent interest in Impact.

Impact suffered losses for the period 1992 through 1994. Petitioner's share of the 1992 loss was $120,630 (95 percent of

---

[1] Staci K. Cronin is a petitioner solely by virtue of having filed a joint returns with her husband. Hereinafter, references to "petitioner" will be to petitioner husband, Jerome B. Cronin.

[2] Discharge of indebtedness income is also referred to as cancellation of debt income (COD income). For purposes of this opinion, we refer to the income generated from the discharge of indebtedness pursuant to sec. 61(a)(12) as COD income.

$126,979). This loss exceeded petitioner's basis in his Impact stock. As a result, petitioner's basis was reduced to zero, and $99,148 of the loss was suspended.

Petitioner's share of the 1993 loss was $291,815 (95 percent of $307,174). Again, petitioner's basis in his Impact stock was reduced to zero and an additional $288,806 loss was suspended.

In 1994, Impact reported a further loss of $204,245. Petitioner's share of this loss was $194,033. During 1994, Impact made an assignment of its assets for the benefit of its creditors. In consummating this transaction, Impact realized COD income.[3] Impact was insolvent when it realized this COD income. As a result, it excluded the income.[4] Petitioner increased his Impact stock basis by $532,210 to reflect his share of the COD income.

## Discussion

The principal issue for our consideration in this case is whether petitioner is entitled to an increase in his basis in an

---

[3]There appears to be a discrepancy in the stipulated facts with respect to the amount of COD income Impact realized in 1994. The parties stipulated that the total amount the corporation realized was $532,210. However, they also stipulated that petitioner increased his Impact stock basis by $532,210 to reflect his share of the COD income. Since petitioner owned only 95 percent of Impact's stock, the total amount of COD income would have had to be $560,221 for petitioner's share to be $532,210. Since our ultimate conclusion is that none of the COD income flowed through to petitioner or had any impact on his personal income taxes, we need not inquire further into this discrepancy.

[4]See sec. 108(a)(1)(B).

S corporation's stock as a result of any COD income realized by that corporation.

Section 61 defines, in a general manner, gross income as "all income from whatever source derived". Section 61(a)(12) further elaborates on this broad language by providing that gross income specifically includes amounts received from cancellation of indebtedness. A taxpayer may realize COD income by paying an obligation at less than its face value. <u>United States v. Kirby Lumber Co.</u>, 284 U.S. 1 (1931). The underlying rationale of this principle is that a reduction in debt without a corresponding reduction in assets causes an economic gain and income to the debtor because the assets are no longer encumbered. A cancellation of indebtedness generally produces income to the debtor in an amount equal to the difference between the amount due on the obligation and the amount paid for the discharge. If no consideration is paid for the discharge, then the entire amount of the debt is considered the amount of income which the debtor must include in income. Sec. 61(a)(12).

However, in some circumstances, COD income may be excluded. Section 108(a)(1) reads as follows:

SEC. 108(a). Exclusion From Gross
          Income.--

     (1) In general.--Gross income does not include any
amount which (but for this subsection) would be
includible in gross income by reason of the discharge
(in whole or in part) of indebtedness of the taxpayer
if--

          (A) the discharge occurs in a title 11
     case, or

                    (B) the discharge occurs when the
        taxpayer is insolvent, or

                    (C) the indebtedness discharge is
        qualified farm indebtedness, or

                    (D) in the case of a taxpayer other than
        a C corporation, the indebtedness discharged
        is qualified real property indebtedness.

Thus, section 108(a)(1) provides an exclusion for COD income if

(A) the discharge occurs in a title 11 case, (B) the discharge

occurs when the taxpayer is insolvent, (C) the indebtedness

discharged is qualified farm indebtedness,or (D) the debtor is a

C corporation and the discharged debt is qualified real property

business indebtedness.

    Section 108(d)(7)(A) specifies that in the case of an S

corporation, certain provisions of section 108 shall be applied

at the corporate level.  We have held that, where COD income of

an S corporation is shielded from recognition by section

108(d)(7)(A), the income does not flow through to, or increase

the basis of, the S corporation's shareholders.  Nelson v.

Commissioner, 110 T.C. 114 (1998); Friedman v. Commissioner, T.C.

Memo. 1998-196; Chesapeake Outdoor Enterprises, Inc. v.

Commissioner, T.C. Memo. 1998-175; see also Winn v. Commissioner,

T.C. Memo. 1998-71.  Thus, petitioner, as an S corporation

shareholder, would be precluded from increasing his basis in

Impact's stock on account of COD income excluded from Impact's

gross income by reason of insolvency.

Petitioner argues that our holding in <u>Nelson v.</u> <u>Commissioner</u>, <u>supra</u> does not apply in this instance. Petitioner points out that for the years at issue in <u>Nelson</u>, section 1.1367-1(d)(2)of the Income Tax Regs., had not yet become effective. That regulation, which applies to shareholders' basis, provides in part:

> An adjustment for a nontaxable item is determined for the taxable year in which the item would have been includible or deductible under the corporation's method of accounting for federal income tax purposes if the item had been subject to federal income taxation.

Petitioner contends that if this regulation had been in effect for the years at issue in <u>Nelson</u>, we would have been required to reach a different result. We disagree.

In deciding <u>Nelson</u>, we concluded, based on the legislative history of section 108, that the rule embodied in the regulation petitioner cites was already in effect. <u>Nelson v. Commissioner</u>, <u>supra</u> at 118. Nevertheless, we held that "section 108(d)(7)(A) explicitly provides that the COD income exclusion operates, for purposes of the subchapter S regime, on the corporate level." <u>Nelson v. Commissioner</u>, <u>supra</u> at 121.

Section 1.1367-1(d)(2), Income Tax Regs., does not require that COD income flow through to S corporation shareholders. Rather it specifies how tax exempt income, which does flow through from an S corporation to its shareholders, affects those shareholders' basis. Since we have held there is no such flowthrough with respect to COD income, section 1.1367-1(d)(2), Income Tax Regs., does not come into play.

In reaching our holding herein, we have considered all arguments made by petitioner, and to the extent not mentioned above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.