William C. WITZEL and Gene E. Witzel, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 99–2482.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1999

Decided Jan. 18, 2000

Wayne A. Cooper (argued), Burke, Warren, Mackey & Serritella, Chicago, IL, for Petitioners–Appellants.

Stuart L. Brown, Internal Revenue Service, Edward T. Perelmuter (argued), Teresa McLaughlin, Department of Justice, Tax Division, Appellate Section, Washington, DC, for Respondent–Appellee.

Before POSNER, Chief Judge, and COFFEY and MANION, Circuit Judges.

POSNER, Chief Judge.

This is an appeal by taxpayers from a decision by the Tax Court (77 T.C.M. (CCH) 1487 (1999)) holding, consistently with *Gitlitz v. Commissioner*, 182 F.3d 1143 (10th Cir.1999), and *Nelson v. Commissioner*, 110 T.C. 114 (1998), that "discharge of indebtedness" (equivalently, "cancellation of debt") income that is excluded from gross income under 26 U.S.C. § 108(a) does not pass through to a shareholder of a subchapter S corporation and therefore does not increase the shareholder's basis.

A debt that is cancelled is income to the debtor, since he has been enriched by the amount of the debt. § 61(a)(12); see also *United States v. Kirby Lumber Co.*, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931). But when, as in the present case, the debtor is in bankruptcy under Chapter 11 of the Bankruptcy Code, section 108(a) of the Internal Revenue Code exempts the debtor's cancellation-of-debt (COD) income from federal income tax. Mr. Witzel is the sole shareholder of a subchapter S corporation that as part of its discharge from Chapter 11 was permitted to cancel some $5.4 million in debts. Income received by a subchapter S corporation is taxed to each shareholder pro rata as if he had received the income directly, 26 U.S.C. § 1366, but by virtue of section 108(a) Witzel incurred no liability to pay tax on any of the $5.4 million in additional cancellation of debt income.

So far, so good; but at the time of his corporation's discharge from bankruptcy, Witzel had loss carryforwards arising from the operation of the corporation that he would have liked to offset against his other, taxable income but could not because the basis of his S corporation stock was too low (was in fact zero). These are called

"suspended losses," because their use as a tax deduction is suspended until the corporation generates income that can be offset against them. § 1366(d). As Witzel points out, the income of a subchapter S corporation is added to the basis of the shareholder's stock (or pro rata to the basis of each shareholder's stock if there is more than one shareholder) and then subtracted when the income is distributed to the shareholder. § §1367. Were it not subtracted, the shareholder might have to pay capital-gains tax on the amount of the distribution if he sold his stock, and that would be the kind of double taxation that the Internal Revenue Code allows shareholders in a subchapter S corporation to escape.

What Witzel wanted to do in this case, and the Tax Court forbade, was to use his corporation's $5.4 million of tax-exempt COD income to increase the basis in his stock by that amount and by doing so offset a portion of his loss carryforwards (which at the time totaled almost $3 million) against his current income and so reduce the tax on that income. This would be a kind of double dipping. Witzel received a tax break on the $5.4 million; it is not taxable income to him. He wants to get another tax break by using that amount to reduce his other, taxable income by a portion of his suspended losses that, were it not for his $5.4 million in tax-free income, he could not use to obtain a tax benefit, at least not yet. He wishes to parlay a $5.4 million tax exemption into a more than $8 million tax exemption.

It is hard to understand the rationale for using a tax exemption to avoid taxation not only on the income covered by the exemption but also on unrelated income that is not tax exempt. The Witzels' lawyer admitted at argument that his clients are seeking a windfall. See also James S. Eustice & Joel D. Kuntz, *Federal Income Taxation of S Corporations* ¶ 14.04[2], pp. 14–10 to 14–11 (3d ed.1993). But of course not all tax statutes have a public-interest rationale, many being the product of favoritism and interest-group pressures. So we must attend to the statute.

In excluding COD income from gross income, the Code requires, among other things, that the taxpayer's net operating losses be reduced by the amount of the excluded income. § 108(b)(2)(A). In the case of subchapter S corporations, this provision "shall be applied at the corporate level." § 108(d)(7)(A). Because suspended losses are deemed "net operating losses," § 108(d)(7)(B), the government argues that they must be reduced by the amount of tax-exempt COD income and so they are unavailable to offset against Witzel's other income. He argues that the suspended losses, like other gains and losses of subchapter S corporations, passed through the corporation to him and so there is nothing "at the corporate level" to offset against the corporation's tax-exempt income, which also passes through to him and is thus available to offset his suspended losses. The government argues, to the contrary, that "at the corporate level" means that the suspended losses and COD income stick there.

The government's interpretation is not inevitable. Application of section 108 "at the corporate level" could mean just that the relevant bankruptcy status which triggers a tax exemption for COD income is that of the corporation, not the shareholder. But this would leave out of account the reference in subsection (d) (the "at the corporate level" subsection) to subsection (b), the subsection that reduces tax "attributes" (here, the suspended losses) by the amount of the excluded income. If (b) is to be applied at the corporate level, the implication, as the government argues, is that the excluded income must be set off against the suspended losses and the latter reduced accordingly. The argument is not conclusive; the interpretive question could be resolved either way; but in these circumstances of dubiety the sensible result—denying the taxpayers the double windfall—seems to us the preferable one.

We are unpersuaded, however, by the government's further argument, which the Tenth Circuit accepted in *Gitlitz* and which the Tax Court accepted not only in *Gitlitz* but also in *Nelson* and the present case, that COD income does not increase the basis of the shareholder's stock in the subchapter S corporation. 182 F.3d at 1149–51. (For criticism, see Stephen R. Looney, "S Corp. Prop. Regs.—No Surprises, But Two Potentially Controversial Provisions," 90 *J. Taxation* 69, 72 (1999).) In effect, the government wants the courts to do for subchapter S corporations by interpretation what the Internal Revenue Code does explicitly in the case of partnerships—simultaneously with increasing the partner's basis by his share of the partnership's COD income decrease the partner's basis by the same amount because "any decrease in a partner's share of the liabilities of a partnership ... shall be considered as a distribution of money to the partner by the partnership." 26 U.S.C. § 752(b); see S. Rep. No. 1035, 96th Cong., 2d Sess. 21–22 (1980); Looney, *supra*, at 72.

Recall that section 1367 increases the basis of the shareholder's stock in the subchapter S corporation by the amount of corporate income passed through to him. Section 1366 is explicit that the pass through includes tax-exempt income. § 1366(a)(1)(A). The Tax Court believes that COD income is not really tax exempt, because, as we know from section 108(b)(2)(A), such income reduces suspended losses by a dollar for every dollar of COD income and thus operates to defer rather than to eliminate tax. (The tax is paid when the suspended losses, having been reduced, are not available to offset taxable income in the future.) The Supreme Court said the same thing in passing in *United States v. Centennial Savings Bank FSB*, 499 U.S. 573, 580, 111 S.Ct. 1512, 113 L.Ed.2d 608 (1991), but, with all due respect, the Court's observation is not accurate. To the extent that the recipient of COD income (Witzel, to whom the income passed through his subchapter S corporation) never accrues suspended losses which that income reduces (thus reducing the tax benefits that they generate), his COD income will be tax exempt in the fullest sense; it will not generate tax liability even indirectly. More important, section 1366 is not limited to tax-exempt income, so if COD income is not "really" tax exempt this would not take it out of the section.

We think, therefore, that while Witzel was rightly forbidden to deduct his existing suspended losses, because they were offset at the corporate level by the amount of his corporation's COD income, the basis in his stock was increased by that income, and this may enable him someday to deduct *future* suspended losses. We offer this view tentatively, in part because the Tenth Circuit has held the contrary and we are reluctant to precipitate an intercircuit conflict, in part because Mr. Witzel may never again have suspended losses, making the issue rather moot as to him unless he someday sells his stock and his capital-gains tax liability is affected by his basis (higher in our view than in the Tax Court's), and in part because a recently promulgated Treasury Regulation (not applicable to this case, however, because it applies only to tax years beginning on or after August 18, 1998) adopts the Tax Court's interpretation of section 1366 that we are criticizing. Treas. Reg. § 1.1366–1(a)(2)(viii), 64 Fed.Reg. 71641 (Dec. 22, 1999). The validity of the regulation is for the future; it is enough to rule today that section 108(d)(7)(A) requires that COD income of a subchapter S corporation be offset against any *existing* suspended losses arising from the operation of the corporation.

AFFIRMED.