James H. PUGH, Jr. and Alexis Pugh, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 99-12646.

United States Court of Appeals,

Eleventh Circuit.

June 5, 2000.

Appeal from a Decision of the United States Tax Court. (No. 96-27237).

Before CARNES, BARKETT and WILSON, Circuit Judges.

WILSON, Circuit Judge:

This case features a taxpayer who seeks to take personal tax advantage from his S corporation's insolvency. Put simply, the taxpayer owned shares in an S corporation. The corporation owed money, was forgiven the debt, and then liquidated. The taxpayer sought to have the cancellation-of-debt (COD) income flow through to him and increase his basis in his S corporation stock. Then the taxpayer claimed a tax deduction for a capital loss based on the increased basis. The Tax Court ruled that the COD income belonged only to the S corporation, did not flow through to the taxpayer, and did not increase his basis. We hold that although the tax treatment urged by the taxpayer seems contrary to the Code's spirit, it is dictated by the Code's plain language. We therefore reverse the decision of the Tax Court.

*BACKGROUND*

Appellant James Pugh ("Pugh")[1] owned shares in Epoch Capital Corporation ("Epoch"), an S corporation that fell on hard times in 1990. Being insolvent, Epoch was forgiven $661,357 in debt, realized the same amount in cancellation-of-debt (COD) income, liquidated, and filed articles of dissolution. At the time of liquidation, Pugh owned 97% of Epoch's then-worthless stock. He did not receive any distribution from Epoch when it liquidated.

---

[1]Mr. Pugh's wife Alexis is party to the appeal solely because she filed joint returns with her

On its 1990 tax return, Epoch excluded the COD income from its gross income. In preparing his personal tax returns, Pugh treated Epoch's COD income by applying the "pass-through" principles and basis adjustment provisions normally applicable to subchapter S corporate shareholders. Pugh adjusted his basis upward by $612,245, his share of Epoch's COD income. By increasing his basis, Pugh sought to take advantage of the losses resulting from the precipitous decline in the value of his stock. Pugh claimed a capital loss for the Epoch stock on his 1990 return and a carry-forward loss on his 1991 return.[2] Pugh had no other losses carrying forward from previous years.

The Commissioner determined that Pugh was not entitled to increase his basis by the amount of the COD income, and asserted deficiencies against Pugh. Pugh contested the deficiencies by filing a petition in the tax court. The tax court, relying on *Nelson v. Commissioner,* 110 T.C. 114 (1998),[3] ruled that "COD income realized and excluded from gross income under section 108(a) does not pass through to shareholders of an S corporation as an item of income in accordance with section 1366(a)(1) so as to enable an S corporation shareholder to increase the basis of his stock under section 1367(a)(1)." This appeal followed.

*DISCUSSION*

We have jurisdiction to review the decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). The Tax Court's statutory interpretation receives *de novo* review. *See Estate of Wallace v. Commissioner,* 965 F.2d 1038, 1044 (11th Cir.1992) (quoting *Young v. Commissioner,* 926 F.2d 1083, 1089 (11th Cir.1991)).

---

[2]On Pugh's personal return, he reported his distributive share of Epoch's ordinary losses ($199,857) and an additional loss of $100,000. Taking only these loss adjustments into account, Pugh's basis was $394,802 at the end of 1990.

[3]The Tenth Circuit affirmed *Nelson* on the rationale of its opinion in *Gitlitz v. Commissioner,* 182 F.3d 1143 (10th Cir.1999), *cert. granted,* --- U.S. ----, 120 S.Ct. 1830, --- L.Ed.2d ----, 68 U.S.L.W. 3497 (May 1, 2000) (No. 99-1295). *See Nelson v. Commissioner,* 182 F.3d 1152 (10th Cir.1999).

At issue in this appeal is the amount of loss Pugh can deduct as a capital loss on his tax return. Pugh's capital loss is determined with reference to his adjusted basis in his Epoch stock;[4] Pugh and the Commissioner disagree on whether Pugh's basis could reflect his pro rata share of Epoch's cancellation-of-debt (COD) income.

This Circuit has not addressed the issue of whether COD income realized and excluded from gross income under 26 U.S.C. § 108(a) passes through to shareholders of an S corporation as an item of income under 26 U.S.C. § 1367(a)(1), and whether S corporation shareholders can increase their individual stock basis to reflect the corporation's COD income. The answer involves the interplay between the way the Code treats COD income and the way the Code treats the tax liability of S corporation shareholders.[5]

Our analysis begins with the language of the Code itself. *See Griffith v. United States* (In re *Griffith* ), 206 F.3d 1389 (11th Cir.2000) (en banc). "[I]f the language of the statute is plain, then our interpretative function ceases and we should 'enforce [the Code] according to its terms.' " *Id.* at 1393 (quoting *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). Because the Code clearly provides that

---

[4]*See* 26 U.S.C. §§ 165(b), 1001(a), 1011.

[5]The proper treatment of an S corporation's COD income has been the subject of much discussion by the courts and commentators. The Supreme Court has granted certiorari review in one case, with two petitions for certiorari review pending as of the date of this opinion. *See Gitlitz v. Commissioner,* 182 F.3d 1143 (10th Cir.1999), *cert. granted,* --- U.S. ----, 120 S.Ct. 1830, --- L.Ed.2d----, 68 U.S.L.W. 3497 (May 1, 2000) (No. 99-1295); *United States v. Farley,* 202 F.3d 198 (3d Cir.), *petition for cert. filed,* 68 U.S.L.W. 3670 (U.S. Apr. 17, 2000) (No. 99-1675); *Witzel v. Commissioner,* 200 F.3d 496 (7th Cir.), *petition for cert. filed,* (U.S. Apr. 17, 2000) (No. 99-1693); *see also Nelson v. Commissioner,* 182 F.3d 1152 (10th Cir.1999); *Hogue v. United States,* 85 A.F.T.R.2d 2000-426 (D.Ore., 2000) (No. 99-302-K1, Jan. 3, 2000). For commentary, see, *e.g.,* Richard Gore, *Quandary for S Corp. COD Income Pass-Throughs,* 56 Tax'n for Acct. 157 (1996) (discussing dilemma that accountants face in advising their clients on COD treatment); Richard M. Lipton, *Different Courts Adopt Different Approaches to the Impact of COD Income on S Corps.,* 92 J. Tax'n 207 (2000); Richard M. Lipton, *The Impact of Excluded COD Income on S Shareholders-The 10th Cir. Gets Lost in Gitlitz,* 91 J. Tax'n 197 (1999); Richard M. Lipton, *Tax Court Rejects S Corp. Basis Step-Up for COD Income in Nelson,* 88 J. Tax'n 272 (1998); James D. Lockhart & James E. Duffy, *Tax Court Rules in Nelson that S Corp. Excluded COD Income Does Not Increase Shareholder Basis,* 25 Wm. Mitchell L.Rev. 287 (1999); Stephen R. Looney, *S Corp. Prop. Regs.—No Surprises, but Two Potentially Controversial Provisions,* 90 J. Tax'n 69 (1999) (discussing controversy surrounding IRS's position on treatment of COD income).

all S corporation income passes through to the corporation's shareholders and increases their basis by the amount of the pass-through, we must reverse the tax court.

1) *Pass-through income.*

S corporations allow many small business owners to enjoy the limited liability of the corporate structure without, for the most part, being subject to taxation at the corporate level. *See* 26 U.S.C. § 1363(a); *Beard v. United States,* 992 F.2d 1516, 1518 (11th Cir.1993). Congress implemented this mechanism by providing that the tax repercussions of an S corporation's income and losses pass directly through to its shareholders. *See* 26 U.S.C. § 1366; *Beard,* 992 F.2d at 1518 (noting that S corporation "generally does not pay income taxes as an entity").

Accordingly, shareholders of S corporations determine their tax liability by taking into account their pro rata share of the S corporation's "items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and [ ] nonseparately computed income or loss." 26 U.S.C. § 1366(a)(1). The character of these pass-through items "shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." 26 U.S.C. § 1366(b). Therefore, to determine whether Epoch's COD income passes through to Pugh, we must determine whether it is the type of income suitable for pass-through treatment.

*Nature of Cancellation-of-Debt Income.*

Forgiveness of debt is income because it frees up assets that the taxpayer previously had to dedicate toward repaying its obligations. *See, e.g., United States v. Centennial Savings Bank FSB,* 499 U.S. 573, 582, 111 S.Ct. 1512, 113 L.Ed.2d 608 (1991); *United States v. Kirby Lumber Co.,* 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931). Normally, COD income is included in gross income and would thus pass through to an S corporation's shareholders. *See* 26 U.S.C. §§ 61(a)(12), 1366(a).

**4**

But there is an exception for insolvent debtors. For them forgiveness of debt means little, for even after forgiveness the debtors still owe more than they have. Because insolvents cannot enjoy the freed-up assets, courts have ruled that they need not include the COD amounts in gross income. *See, e.g., Dallas Transfer & Terminal Warehouse Co. v. Commissioner,* 70 F.2d 95, 96 (5th Cir.1934) (noting that cancellation of insolvent's debt "did not have the effect of making the respondent's assets greater than they were before that transaction occurred.... A transaction whereby nothing of exchangeable value comes to or is received by a taxpayer does not give rise to or create taxable income."). Congress codified this exception in 26 U.S.C. § 108, which excludes COD income from gross income if the taxpayer is insolvent. *See* 26 U.S.C. § 108(a)(1)(B).[6]

In granting the exemption, Congress exacted a price. Taxpayers who exclude COD income must offset the exclusion against favorable tax attributes such as net operating losses and capital loss carryovers. *See* 26 U.S.C. § 108(b)(1), (b)(2)(A), (b)(2)(D). These reductions occur after determining tax liability "for the taxable year of the discharge." 26 U.S.C. § 108(b)(4)(A). Further, for S corporations the reductions apply "at the corporate level." 26 U.S.C. § 108(d)(7)(A). Because neither Pugh nor Epoch had unused net operating losses or carryover losses, the offset does not apply directly to this case. However, the Commissioner argues that these provisions show Congress's intent for COD income to stop at the corporate entity and not pass through to S corporation shareholders. To address this argument, we must consider how § 108 applies to S corporations in particular.

*Effect on S Corporation Pass-Through.*

In the case of S corporations, § 108's exclusion (and reduction of tax attributes) "shall be applied at the corporate level." 26 U.S.C. § 108(d)(7)(A). Further, "any loss or deduction which is disallowed for the taxable year of the discharge under section 1366(d)(1)"—that is, losses normally belonging to the

---

[6]" 'Insolvent' means the excess of liabilities over the fair market value of assets." 26 U.S.C. § 108(d)(3). No one disputes that Epoch was insolvent.

shareholders themselves—"shall be treated as a net operating loss for such taxable year."  26 U.S.C. § 108(d)(7)(B).

This language, standing alone, does not explicitly trump the usual S corporation pass-through rules. *All* income that flows through an S corporation begins "at the corporate level."  Nothing in § 108 expressly marks COD income for special bottlenecking—that is, that COD income "at the corporate level" means "at the corporate level and no further."  To see whether COD income passes through to S corporation shareholders, we must inquire whether COD income is an "item of income ... the separate treatment of which could affect the liability for tax of any shareholder."  26 U.S.C. § 1366(a)(1).[7]

The Commissioner's position is that COD income does not pass through under § 1366(a)(1) because it is not an item of income that can pass to shareholders.  The Commissioner argues that § 108 is merely a tax deferment provision, and that COD income not used to reduce corporate tax attributes becomes a nullity. The Commissioner relies on legislative history to show Congress's intent that once a taxpayer reduces its tax attributes, "Any further remaining debt discharge ... does not result in income or have other tax consequences."  S.Rep. No. 96-1035, at 2 (1980), *reprinted in* 1980 U.S.C.C.A.N. 7017, at 7018.

If the S corporation cannot use the COD income to reduce attributes, the Commissioner argues, it never flows through to the S corporation's shareholders.  This position was expressed by Judge Beghe in his concurrence in *Nelson,* 110 T.C. at 131-132 (Beghe, J. concurring) (opining that an insolvent S corporation's COD income could not pass through to a solvent shareholder and the "equivalence rule of section 1366(b)" could not apply).

But as the Third Circuit pointed out, "This statement, made without elaboration by Judge Beghe, is simply incorrect."  *United States v. Farley,* 202 F.3d 198, 208 (3d Cir.), *petition for cert. filed,* 68 U.S.L.W.

---

[7]S corporation shareholders also include in their income "nonseparately computed income or loss."  26 U.S.C. § 1366(a)(1)(B).  This provision does not apply here because "nonseparately computed income" means gross income (less the corporation's deductions), *see* 26 U.S.C. § 1366(a)(2), and Epoch's COD income was excluded from gross income.  *See* 26 U.S.C. § 108(a)(1).

3670 (U.S. Apr. 17, 2000) (No. 99-1675). The Commissioner's argument ignores the clear language of § 1366, which provides that all items of corporate income that could affect shareholders' tax liability pass through to them as if "incurred in the same manner as incurred by the corporation." *See* 26 U.S.C. § 1366(a)(1)(A), (b). Accordingly, the Commissioner's argument has been rejected by every circuit that has considered it. *See Farley,* 202 F.3d at 205 n. 4 ("the language of section 108(b)(4)(A) is clear and unambiguous ... COD income excluded from gross income under section 108 passes through to the S corporation's shareholders"); *Witzel v. Commissioner,* 200 F.3d 496, 498 (7th Cir.) (noting that COD income flows through to S corporation shareholder), *petition for cert. filed* (U.S. Apr. 17, 2000) (No. 99-1693); *Gitlitz v. Commissioner,* 182 F.3d 1143, 1148 (10th Cir.1999) ("the items must pass through to shareholders unless they are absorbed by tax attribute reductions"), *cert. granted,* --- U.S. ----, 120 S.Ct. 1830, --- L.Ed.2d----, 68 U.S.L.W. 3497 (May 1, 2000) (No. 99-1295).

One important difference, however, separates Pugh from the taxpayers in the above cases. Gitlitz, Witzel and Farley all personally carried suspended losses into the years their corporations received COD income. *See* § 1366(d)(1) and (2) (requiring that S corporation shareholders carry over losses that exceed their adjusted basis in their S corporation stock). A suspended loss "disallowed for the taxable year of the discharge under section 1366(d)(1) shall be treated as a net operating loss for such taxable year." 26 U.S.C. § 108(d)(7)(B). Therefore, Gitlitz, Witzel and Farley—either in the year of discharge or in years thereafter—potentially faced direct changes in their tax liability relating to their suspended losses.[8] By

[8]*See Gitlitz,* 182 F.3d at 1150 n. 6 (setting out illustrative examples, including Examples 3 and 4, where taxpayer's suspended losses are characterized as part of the S corporation's net operating losses); *Witzel,* 200 F.3d at 498 (holding that shareholder's suspended losses are "offset at the corporate level by the amount of his corporation's COD income"); Gore, *supra* note 5 ("Because Section 108 may reduce a shareholder's suspended losses, the COD income must pass through to the shareholders."). *Contra Farley,* 202 F.3d at 205 (COD income "shall be applied to reduce the tax attributes of the corporation, rather than the individual shareholder"). The *Farley* court further noted that even if § 108(d)(7)(B) required a shareholder's suspended losses to be considered as net operating losses, "nowhere does section 108(d)(7)(B) indicate that S corporation [COD] income should reduce such net operating losses 'for the taxable year of discharge.' " *Id.* at 207 (quoting 26 U.S.C. § 108(d)(7)(B)). *See also* Lockhart & Duffy, *supra* n. 5, at 299 ("Section 108(d)(7) does not operate to convert shareholder suspended losses into S corporation NOLs.... Section 108(d)(7)(B)

contrast, when Pugh's S corporation realized its COD income, Pugh had no suspended losses. Even if Pugh treated Epoch's COD income as his own,[9] it would not have altered his tax liability directly because he possessed no suspended losses to be affected. Therefore, Epoch's COD income does not at first blush fall within the category of items of income to be passed through to Pugh. *See* 26 U.S.C. § 1366(a)(1)(A) (allowing for pass-through of "items of income ... which could affect the liability for tax of any shareholder").[10]

Of course, the COD income ultimately affects Pugh's tax liability by flowing through under § 1366 and thus increasing Pugh's basis pursuant to § 1367(a)(1)(A). In addition, § 1366(a)(1) does allow one type of income to pass through that might not affect taxpayers' liability initially, namely "tax-exempt income." 26 U.S.C. § 1366(a)(1)(A). Congress provided for pass-through of tax-exempt income to preserve its nature: if tax-exempt income did not flow through under § 1366 and increase shareholders' bases, they would have to pay tax when they sold their stock. *See* 11 Jacob Mertens, *Law of Fed. Income Taxation* § 41B:154 ("A shareholder's increase in basis for tax-exempt income allows the shareholder to avoid recognition of gain as a result of receiving such income (reduced by any distributions) upon the sale of such stock.").

The Commissioner argues that COD income is not "truly" tax-exempt because, unlike other sources of tax-exempt income, COD income is never distributed to shareholders with a corresponding reduction in basis.[11] This distinction is not supported by the plain language of the Code, which simply designates

---

provides the mechanism by which the shareholder attribute (suspended losses) will be subject to the existing corporate attribute reduction regime under 108(b)(2)(A)."). Because Pugh possessed no suspended losses, we need not today reach the issue of how to treat an S corporation shareholder's suspended losses.

[9]*See* 26 U.S.C. § 1366(b) (pass-through income is characterized "as if such item were realized directly from the source from which realized by the corporation").

[10]The Tenth Circuit appears to consider that COD income cannot pass through to shareholders without suspended losses, as shown by its affirmance in *Nelson,* where the shareholder had no suspended losses, and as shown in one of the examples the court used to illustrate its reasoning in *Gitlitz. See Gitlitz,* 182 F.3d at 1150 n. 6 (Example 1).

[11]In *Farley* and *Witzel,* the Commissioner argued that § 108 income was not tax-exempt but only tax-deferred, because it would eventually be offset against tax attributes. *See Farley,* 202 F.3d at 209-10 (rejecting argument); *Witzel,* 200 F.3d at 498 (rejecting argument and similar dicta of *United States v.*

**8**

"tax-exempt" income without any limitation on whether or not the income eventually becomes distributed to shareholders.  *See* 26 U.S.C. § 1366(a)(1)(A).

The COD exemption is located in the part of the Code titled "Items Specifically Excluded from Gross Income."  This section includes various types of tax-exempt income, such as tax-exempt bond income and life insurance proceeds.  *See* 26 U.S.C. §§ 101-136.  The language in § 108 excluding COD income from gross income is virtually identical to that in other sections.  *Compare* 26 U.S.C. § 108(a)(1) (excluding COD income from gross income) *with* 26 U.S.C. § 101(a)(1) (excluding life insurance proceeds from gross income).[12]  Nothing in the Code distinguishes COD income from its cohort as being not "really" tax-exempt.

This is particularly true here, where neither Epoch nor Pugh possessed tax attributes to offset the tax-exempt status of Epoch's COD income.  As Judge Posner noted, absent suspended losses, COD income flows through to S corporation shareholders "tax exempt in the fullest sense."  *Witzel,* 200 F.3d at 498.  *See also Farley,* 202 F.3d at 210 (acknowledging Commissioner's concession that "discharge of indebtedness income is sometimes tax-exempt");  *Gitlitz,* 182 F.3d at 1147 n. 3 ("If a taxpayer's attributes are insufficient to absorb all of his cancellation of indebtedness income, § 108 effectively provides a permanent exception

---

*Centennial Sav. Bank,* 499 U.S. 573, 580, 111 S.Ct. 1512, 113 L.Ed.2d 608 (1991) (although the Supreme Court described § 108 income as tax-deferred, it did so in passing while interpreting a now-deleted provision of § 108)).

The IRS does not treat § 108 income as tax-exempt in its final regulations.  *See* 26 C.F.R. § 1.1366-1(a)(2)(viii):

> [T]ax-exempt income is income that is permanently excludible from gross income in all circumstances....For  example, income that is excludible in gross income under section 101 (certain death benefits) or section 103 (interest on state and local bonds) is tax-exempt income, while income that is excludible from gross income under section 108 ... is not tax-exempt income.

*Id.* The regulations became effective August 18, 1998 (*see* 64 FR 245) and do not apply to this case; accordingly, we do not address their validity.

[12]This point is made by Lockhart & Duffy, *supra* n. 5, at 304 ("in light of the identical statutory language of Sections 101 and 108, it is unclear why" COD income should be treated differently than insurance proceeds).

from taxation on that income."). We join these circuits in ruling that an S corporation's COD income passes through pro rata to its shareholders under § 1366(a)(1),[13] and add that this is so even when the shareholder possesses no suspended losses to offset the COD income.

2)    *Increase in Basis.*

The real sticking point, of course, is not whether Pugh can include Epoch's COD income as an item of income, but whether he can take a personal capital loss deduction boosted by his share of that same COD income. Pugh's loss deduction is determined with reference to his basis;[14] the question thus is whether Pugh can increase his basis to reflect the passed-through COD income.

In general, S corporation shareholders' initial basis corresponds to their cost of the stock plus capital contributions. *See* 26 U.S.C. §§ 1011-1016; 11 Jacob Mertens, *Law of Fed. Income Taxation* § 41B:147. Shareholders' basis in their S corporation stock increases by "the items of income described in subparagraph (A) of section 1366(a)(1)" and decreases by "the items of loss and deduction described in subparagraph (A) of section 1366(a)(1)." 26 U.S.C. § 1367(a). These "items of income" include not only gross income but also other types of income, including tax-exempt income. *See* 26 U.S.C. § 1366(a)(1); *Farley,* 202 F.3d at 206; *Witzel,* 200 F.3d at 498; 15 Collier on Bankruptcy ¶ TX6.03[5][c] ("If discharge income is excluded at the S corporation level under I.R.C. Section 108(a), the shareholders should be entitled to increase the basis of their stock and debt under I.R.C. Section 1367 for their ratable share of excluded income. Under a plain reading of the statutory language, a step-up in basis is allowed for all income, including tax-exempt income.") Therefore, § 1367 requires that Pugh's basis be increased by the amount of COD income that passed through to him from Epoch.

---

[13]The circuits are split on whether the tax attribute reduction occurs at the corporate level before the pass-through, *e.g., Witzel,* 200 F.3d 496; *Gitlitz,* 182 F.3d 1143; or whether the reduction occurs after the pass-through of COD income; *see Farley,* 202 F.3d 198. Because neither Pugh nor Epoch possessed tax attributes to reduce, we need not reach the issue.

[14]*See* 26 U.S.C. §§ 165(b), 1001, 1011.

We recognize that this statutory scheme can lead to the result that shareholders actually benefit from their S corporations' insolvency. Not only do they avoid taxation on the corporation's COD income, but also they may receive capital loss deductions based on their share of the COD income. This jars with the general rule that basis should increase only to the extent of a taxpayer's actual "economic outlay." *See, e.g., Sleiman v. Commissioner,* 187 F.3d 1352, 1357 (11th Cir.1999) (quoting *Selfe v. United States,* 778 F.2d 769, 772 (11th Cir.1985)); *see also Gitlitz,* 182 F.3d at 1151.

Normally, basis increases to the extent the taxpayer reports income from the S corporation; otherwise, the taxpayer would pay double tax upon receiving a distribution or selling the shares. *See* 26 U.S.C. § 1367(a)(1)(A). But if the S corporation receives tax-exempt income that passes through to the shareholder, the shareholder's basis is increased to preserve the tax-exempt nature of the income. *See id.,* 26 U.S.C. § 1366(a)(1)(A). This is so even without an "economic outlay" by the shareholder. *See, e.g., Farley,* 202 F.3d at 207 n. 5 (noting that "numerous exceptions" to economic outlay rule exist, including treatment of COD income as well as life insurance benefits and tax-exempt bond income: "section 108 cannot be distinguished from sections 101 and 103 on the basis of economic outlay considerations"); Lockhart & Duffy, *supra* n. 5, at 304 (noting that in light of identical statutory language, "it is unclear why the absence of an economic outlay results in excluded COD income being treated differently"); *cf. CSI Hyrdostatic Testers, Inc. v. Commissioner,* 62 F.3d 136 (5th Cir.1995) (adopting Tax Court's rejection of argument that S corporation's parent should not receive benefit of subsidiary's COD income because parent had not "paid for" it (*see* 103 T.C. 398, 409 (U.S. Tax Court 1994))); *but see Gitlitz,* 182 F.3d at 1151 (distinguishing COD income because taxpayer made no initial economic outlay).

The Commissioner argues that §§ 108, 1366 and 1367 should be read together to prevent Pugh from enjoying twice the tax-exempt status of COD income. We must acknowledge the justice of the Commissioner's position, for unlike other sources of tax-exempt income, COD income becomes tax-exempt merely from the infelicitous combination of corporate insolvency and a lack of tax attributes to offset the

COD income. But we cannot ignore the language of the statute, which clearly requires that all items of income included in § 1366 must be used to increase the shareholder's basis under § 1367. "The relevant question is not whether, as an abstract matter, the rule advocated by petitioners accords with good policy.... Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. Commissioner,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). While we agree with the Third Circuit that Congress may not have intended the result dictated by the statute,[15] we must leave rewriting the Code to Congress.

*CONCLUSION*

Pugh is entitled to increase the basis in his Epoch stock by his pro rata share in the corporation's COD income for 1990. This case is REVERSED and REMANDED for proceedings in light of this opinion.

---

[15]*See Farley,* 202 F.3d at 212 n. 10.